UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

JUSTIN H.[1],                          )
                                       )
      Plaintiff,                   )
                                       )
      v.                           )     CIVIL NO.  2:18cv383
                                       )
NANCY A. BERRYHILL, Acting             )
Commissioner of Social Security,       )
                                       )
      Defendant.                   )

<u>OPINION AND ORDER</u>

    This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)  as provided for in the Social Security Act.  42 U.S.C. §416(I).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

    The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1] Plaintiff's full name will not be used in this order to protect privacy.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act

on December 31, 2016.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2013 through his date last insured of December 31, 2016 (20 CFR 404.1571 *et seq*.).

3.    Through the date last insured, the claimant had the following severe impairments: seizure disorder, attention deficit hyperactive disorder, generalized anxiety disorder, and bipolar disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for the following limitation.  The claimant can never work at unprotected heights or near moving mechanical parts. Due to moderate limitations in concentration, persistence, or pace, the claimant is limited to understanding, remembering, and carrying out simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); able to interact with supervisors frequently, and with coworkers and the public occasionally; and the claimant is able to engage in no more than occasional decision making and be exposed to no more than occasional changes in job setting.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on June 8, 1983 and was 33 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from March 1, 2013, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

(Tr. 17- 26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on February 7, 2019. On March 12, 2019, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on April 16, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff has a history of psychological impairments. Army records from 2007 reflect a diagnosis of bipolar I disorder with psychotic features. (AR 570-655.) Dr. Frank Quint, M.D. diagnosed attention deficit disorder in August 2014 and prescribed Ritalin. (AR 361-62.) Treating psychiatrist Dr. Mario M. Robbins, M.D. diagnosed generalized anxiety disorder and bipolar disorder I in June 2015. (AR 328-30.) Plaintiff complained of difficulty concentrating, trouble sleeping, fatigue, insomnia, moodiness, anxiety, and hallucinations to Dr. Robbins in June and July 2015. (AR 329, 346.) Dr. Robbins prescribed Adderall, Latuda, Risperdal, Elavil, Abilify, Zyprexa, Depakote, and Lexapro. (AR 327, 346, 390-90, 397, 405-06, 439, 526.) Dr. Robbins diagnosed major depressive disorder in August 2015 and chronic psychosis in September 2015. (AR 399, 403.) In October 2015 Plaintiff complained of crying spells to Dr. Robbins. (AR 417.) Plaintiff told Dr. Robbins in January 2016 that he felt manic swings and very low depressive periods. (AR 438-41.) In May 2016 Plaintiff complained of morning anxiety attacks. (AR 461.) In May 2017 Dr. Richard Cristea, M.D. noted Plaintiff's complaints of anxiety, depression, difficulty sleeping, problems concentrating, memory loss, irritability, and panic attacks. (AR 556.) Dr. Cristea also diagnosed lumbar radiculopathy and thoracic spine pain. (AR 557-58.)

Plaintiff underwent a consultative psychological examination with Dr. Gary M. Durak, Ph.D. in May 2015 on behalf of the Disability Determination Office of the State of Indiana. (AR 321.) Dr. Durak observed that Plaintiff's concentration was somewhat inattentive and distractible. (AR 323.) His memory was sometimes inconsistent, and his mood and affect were anxious and depressed. (AR 323.) He could only recall three of six items after ten minutes elapsed time. (AR

324.) Dr. Durak diagnosed attention deficit hyperactivity disorder. (AR 325.)

Dr. Robbins noted in August 2017 that Plaintiff suffered from racing thoughts, low energy, trouble concentrating, depressed mood as well as difficulty thinking, paranoid thinking, emotional isolation, bipolar syndrome with a history of manic and depressive syndromes, and easy distractibility. (AR 656-57.) Dr. Robbins opined that Plaintiff was unable to meet competitive standards in getting along with co-workers without unduly distracting them or exhibiting behavioral extremes, dealing with normal work stress, responding appropriately to changes in a routine work setting, understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with the stress of semi-skilled or skilled work. (AR 658-59.) He further was seriously limited in maintaining attention for two-hour segments, working in coordination with or in proximity to others without being unduly distracted, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and setting realistic goals or making plans independently of others. (AR 658-59.) Plaintiff would be absent from work at least one day per month. (AR 660.)

At the initial level, non-examining State agency reviewing psychologist Dr. F. Kladder, Ph.D. opined in August 2015 that Plaintiff had severe major motor seizures and organic mental disorders resulting in mild restrictions of his activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (AR 76-77.) He had moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors. (AR 81-82.) Plaintiff could handle simple,

repetitive tasks in an environment with limited social interaction. (AR 82.) At the reconsideration level, Dr. Kenneth Neville, Ph.D. confirmed these findings in November 2015. (AR 92-97.)

Plaintiff testified that he had weekly seizures. (AR 42-43.) He was frequently sad and experienced hallucinations. (AR 45.) He received an honorable discharge from the Army but was discharged due to psychiatric issues. (AR 49.) He did not receive VA benefits because his psychiatric problems predated his service. (AR 49-50.) He had previously taken Lithium and Zyprexa. (AR 51.) He had problems focusing and sitting still and was unable to clearly answer the ALJ's questions. (AR 44.)

Plaintiff's wife testified and noted that he had seizures approximately once a week; he would lose track of time and his surroundings and would wake confused and in a daze. (AR 52-53.) She noted that he took Depakote for his seizures. (AR 53-54.) She stated that Plaintiff went through periods of extreme irritability and anger. (AR 55.) His condition had worsened over time. (AR 56.) He would start tasks but not finish them. (AR 57.) She testified that Plaintiff experienced auditory and visual hallucinations during manic phases. (AR 58-59.) He had problems dealing with new situations or changes in routine. (AR 60.) He frequently "spaced out" and was unable to participate in conversation. (AR 61.) When he worked, he was unable to arrive on time in the mornings due to his seizures. (AR 62-63.) A vocational expert testified and opined that if an individual of Plaintiff's age, education, and work experience were off-task in excess of 10% of the workday, he could not sustain employment. (AR 68-69.) If the individual got into arguments or threatened a supervisor or co-worker, he would also be unemployable. (AR 69-70.)

In a function report, Plaintiff stated that he had problems caring for himself. (AR 210.) He could not focus and had problems following directions. (AR 212.) Plaintiff's mother filled out a

seizure questionnaire and noted that he experienced seizures 2-3 times weekly and would be confused and disoriented after having a seizure. (AR 219.)

In support of remand, Plaintiff first argues that the ALJ did not properly evaluate his seizures. The ALJ determined that Plaintiff suffered from severe seizure disorder but failed to include limitations pertaining to Plaintiff's seizures in the RFC assessment. (AR 17, 20.) The ALJ stated that despite the lack of objective evidence regarding Plaintiff's seizure disorder, the ALJ "gave [Plaintiff] the benefit of the doubt and limited him to the above noted residual functional capacity." (AR 24.)

SSR 96-8p requires an ALJ's RFC assessment to "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms...and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." Severe impairments are those which have more than a minimal effect on an individual's ability to do basic work activities. *See* 20 C.F.R. Sec. 404.1505; Sec. 404.1520(c); Sec. 404.1522. Once an ALJ has determined that an impairment is severe, he determines how that impairment impacts a claimant's ability to work in determining the claimant's RFC at Step 4.

The Seventh Circuit in *Barnett v. Barnhart*, 381 F.3d 664, 668-70 (7th Cir. 2004), held that the ALJ erred when he never affirmatively determined how many seizures plaintiff experienced when he discredited plaintiff's account of more frequent seizures, finding that account was inconsistent with her activities and with treating doctors' descriptions of her seizures. *See also Boiles v. Barnhart*, 395 F.3d 421, 425, 427 (7th Cir. 2005) (finding that the ALJ erred in not making a finding as to frequency of plaintiff's seizures and improperly relied on

the lack of emergency room visits as evidence that plaintiff's seizures did not occur as frequently as alleged). In this case, the ALJ determined that Plaintiff's seizures were a severe impairment but did not make a finding as to the frequency and severity of those seizures. *See Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir.2014) (reversing where ALJ found headaches severe but failed to include any related limitations in the residual functional capacity assessment); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (remanding where the ALJ failed to discuss how Indoranto's severe headaches affected her ability to work and did not make a finding as to the frequency and severity of those headaches).

Plaintiff testified that he had weekly seizures. (AR 42-43.) Treating psychiatrist Dr. Robbins prescribed Depakote, and Plaintiff testified that after having a seizure he felt as though he had an extremely bad hangover. (AR 43, 439.) The State agency doctors also found that Plaintiff had severe major motor seizures. (AR 76, 92.) Plaintiff's mother filled out a seizure questionnaire and noted that he experienced seizures 2-3 times weekly and would be confused and disoriented after having a seizure. (AR 219.) Plaintiff's wife testified and noted that he had seizures approximately once a week; he would lose track of time and his surroundings and would wake confused and in a daze. (AR 52-53.) She noted that he took Depakote for his seizures. (AR 53-54.) The ALJ afforded some weight to the statements of Plaintiff's wife and mother regarding Plaintiff's seizures but determined that they were inconsistent with the record as a whole. (AR 21.) Yet, the ALJ did not determine how often Plaintiff suffered seizures nor explain with particularly what portions of the RFC assessment accommodated those seizures despite finding them to be a severe impairment. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (RFC assessments must include a narrative discussion explaining the ALJ's

conclusions). The "benefit of the doubt" the ALJ afforded to Plaintiff did not align with legal precedent requiring the ALJ to trace his reasoning in reaching his conclusions and explain how Plaintiff's severe seizures were accommodated in the RFC assessment. The ALJ did not explain why Plaintiff's seizures were a severe impairment yet did not adopt the consistent statements of Plaintiff, his wife, and his mother regarding the frequency and after-effects of those seizures. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (If the decision lacks adequate discussion of the issues, then the court must remand the matter); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

Moreover, the ALJ did not explain why Plaintiff's seizures would not take him off-task throughout the workday despite finding that they were a severe impairment. While the ALJ found that evidence from Plaintiff, his wife, and his mother that he suffered from seizures at least once weekly was inconsistent with the record, the ALJ did not explain why consistent evidence from three sources that Plaintiff's seizures and subsequent recovery period caused confusion and disorientation did not result in any necessary off-task time throughout the workday. (AR 21, 24); *See Mazzuca v. Colvin*, 2013 WL 1343344 *14 (N.D. Ill. Apr. 2, 2013) (remanding where the ALJ failed to account for the "nature and extent of the relationship" between the claimant and a non-medical source, in that case his wife, and explain why the long and intimate relationship between the two did not support the claimant's wife's statements about her observations of the claimant). The record reflects that both Plaintiff's wife and mother stated that Plaintiff was confused, disoriented, and unable to follow tasks following a seizure. (AR 53, 219.) The ALJ asked the vocational expert at the hearing about the allowable off-task time for an individual of Plaintiff's age, education, and work experience. (AR 67-68.) The expert testified that the

individual could be off-task for no more than 10% of the workday, and if they were absent from work two days out of the month, they could not sustain employment. (AR 67-69.) Yet in the decision the ALJ did not address the issue of off-task time, and Plaintiff argues that this error was not harmless as the ALJ failed to consider whether Plaintiff's seizures and their after-effects as testified to by his wife and mother took him off-task for a work-preclusive amount of time throughout the workday. (AR 68-69.)

In *Kukec v. Berryhill*, 2017 WL 5191872 *3-4 (N.D. Ill. Nov. 9, 2017) the court remanded where the ALJ raised the issue of off-task time with the vocational expert and then failed to explain why no off-task time was necessitated by the claimant's impairments. The Court reasoned that by asking the VE questions regarding off-task time, the ALJ had reason to believe that the plaintiff might have needed to be off-task for at least some of the time, or else there would have been no reason to pose such a hypothetical to the VE. Accordingly, the ALJ needed to explain her findings regarding the claimant's need to be off-task. *See also Diaz v. Berryhill*, 2018 WL 4627218 *8 (N.D. Ind. Sept. 27, 2018) (remanding where "the ALJ considered the issue of off-task time, but then she failed to provide any analysis of whether, for example, the claimant was limited by any off-task allowances and, if so, for how long"). At minimum, Plaintiff argues, the ALJ needed to explain why Plaintiff's severe seizures did not result in a significant amount of off-task time or absenteeism.

In response, the Defendant argues that the ALJ reasonably concluded that while Plaintiff's seizure disorder was severe, it was not disabling. Yet that contention does not address Plaintiff's argument that the ALJ erred in finding that Plaintiff's seizure disorder was severe—which by definition means it caused more than minimal limitations on his ability to perform basic work

tasks—yet did not make findings regarding the frequency and severity of Plaintiff's seizures nor explain why Plaintiff's allegations regarding the effects of his seizures were not incorporated into the RFC assessment. *See* 20 C.F.R. Sec. 404.1505; Sec. 404.1520(c); Sec. 404.1522. The ALJ could not make a determination whether Plaintiff's seizures were disabling without making findings regarding the frequency of seizures, the limiting effects of the seizures, and employer tolerances for an employee suffering seizures while at work.

SSR 96-8p requires an ALJ's RFC assessment to "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms...and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." Plaintiff testified that he had weekly seizures. (AR 42-43.) Treating psychiatrist Dr. Robbins prescribed Depakote, and Plaintiff testified that after having a seizure he felt as though he had an extremely bad hangover. (AR 43, 439.) The State agency doctors also found that Plaintiff had severe major motor seizures. (AR 76, 92.) Plaintiff's mother filled out a seizure questionnaire and noted that he experienced seizures 2-3 times weekly and would be confused and disoriented after having a seizure. (AR 219.) Plaintiff's wife testified and noted that he had seizures approximately once a week; he would lose track of time and his surroundings and would wake confused and in a daze. (AR 52-53.) She noted that he took Depakote for his seizures. (AR 53-54.) Despite this evidence, the ALJ did not explain why Plaintiff's seizures were a severe impairment yet did not adopt the consistent statements of Plaintiff, his wife, and his mother regarding the frequency and after-effects of those seizures. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (If the decision lacks adequate discussion of the issues, then the court must remand the matter).

The Defendant argues that the ALJ expressly noted the subjective allegations of Plaintiff, his wife, and his mother, but also discussed the objective medical evidence, which did not reveal complaints of seizures at the frequency they alleged. However, the Seventh Circuit has recognized that a claimant's allegations can be consistent with the record even in the absence of corroborative objective evidence. *See Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014) ("Pain can be severe to the point of being disabling even though no physical cause can be identified..."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (rejecting statement that "there is little objective evidence to support the claimant's allegations of extreme pain" as legally insufficient). The Seventh Circuit has similarly held that an ALJ must make determinations regarding the frequency and severity of a claimant's severe impairment. *See Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (reversing where ALJ found headaches severe but failed to include any related limitations in the residual functional capacity assessment); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (remanding where the ALJ failed to discuss how Indoranto's severe headaches affected her ability to work and did not make a finding as to the frequency and severity of those headaches). The ALJ failed to do so in this case, and did not make a finding regarding how frequently Plaintiff experienced seizures. The ALJ gave Plaintiff's allegations concerning his seizures the "benefit of the doubt" yet did not factor his alleged limitations into his RFC, and did not adequately explain why his allegations were not consistent with the record. (AR 24); *see* SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions").

The Defendant argues that the ALJ addressed Plaintiff's seizure disorder by finding that

he could never work at unprotected heights or near moving mechanical parts, and needed to perform simple work with minimal interaction and changes. However, the ALJ did not explain the relationship between Plaintiff's severe seizures and those specific limitations. *See Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) (remanding where "the judge mentioned that she was restricting the plaintiff to simple work because of his sleep apnea, but did not explain why someone with hypersomnia should be able to stay awake at work just because it's simple work"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("RFC assessments must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts").

Additionally, the Defendant argues that the ALJ explained why Plaintiff's seizures did not result in any necessary off-task time throughout the workday. However, the ALJ did not explain why consistent evidence from three sources that Plaintiff's seizures and subsequent recovery period caused confusion and disorientation did not result in any necessary off-task time throughout the workday. (AR 21, 24); *See Mazzuca v. Colvin*, 2013 WL 1343344 *14 (N.D. Ill. Apr. 2, 2013) (remanding where the ALJ failed to account for the "nature and extent of the relationship" between the claimant and a non-medical source, in that case his wife, and explain why the long and intimate relationship between the two did not support the claimant's wife's statements about her observations of the claimant). Both Plaintiff's wife and mother stated that Plaintiff was confused, disoriented, and unable to follow tasks following a seizure. (AR 53, 219.) Plaintiff testified that after having a seizure he felt as though he had an extremely bad hangover. (AR 43, 439.) The Defendant claims that the ALJ did explain his conclusions regarding off-task time, carefully weighing all of the subjective statements described above. Yet a careful weighing

14

of those statements would have involved a discussion of why the allegations made by Plaintiff, his wife, and his mother did not result in the inclusion of any off-task time as a consequence of Plaintiff's severe seizures in his RFC.

The Defendant argues that Plaintiff argues that because the ALJ was thorough in questioning the vocational expert, and asked an additional hypothetical regarding off-task time, the Court should find that he had reason to believe that Plaintiff might have needed to be off-task. The Defendant misstates Plaintiff's argument. Plaintiff actually argued that the ALJ needed to explain why Plaintiff's seizures would not result in off-task time in light of consistent evidence suggesting that they would. Plaintiff does not, as the Defendant suggests, criticize the ALJ for thoroughly questioning the vocational expert. Plaintiff argues that by thoroughly questioning the vocational expert and bringing up the issue of off-task time with that expert, the ALJ then had to explain how he reached his conclusions regarding Plaintiff's need to be off-task in the decision. *See Hawist v. Berryhill*, 2018 WL 6399094 *4 (N.D. Ill. Dec. 6, 2018) ("this Court believes that the ALJ did, in fact, consider Hawist's propensity for off-task behavior, but failed to provide any analysis in his decision whatsoever for his reasons for not including this evidence in Hawist's RFC. This lack of an 'accurate and logical bridge between the evidence and his conclusion; warrants remand"); *Diaz v. Berryhill*, 2018 WL 4627218 *8 (N.D. Ind. Sept. 27, 2018) (remanding where "the ALJ considered the issue of off-task time, but then she failed to provide any analysis of whether, for example, the claimant was limited by any off-task allowances and, if so, for how long"). The vocational expert testified that an individual of Plaintiff's age, education, and work experience could be off-task for no more than 10% of the workday. (AR 67-69.) Given that testimony, the ALJ needed to explain why testimony from Plaintiff, his wife, and his mother

that Plaintiff was confused, disoriented, and unable to follow tasks following a seizure would not

result in off-task time throughout the workday. (AR 53, 219.)  This is a clear error in the ALJ's

decision, warranting remand.

Next, Plaintiff argues that the ALJ's RFC assessment insufficiently accommodated his

concentration problems and interpersonal difficulties.  The ALJ determined that Plaintiff had

moderate limitations in concentration, persistence, or pace. (AR 19-20.) The ALJ limited Plaintiff

to "understanding, remembering, and carrying out simple, routine, and repetitive tasks but not at a

production rate pace" with only occasional changes in the job setting. (AR 20.) Yet the Seventh

Circuit has repeatedly held that such limitations do not adequately capture a claimant's moderate

concentration persistence, or pace difficulties: "The ability to stick with a given task over a

sustained period is not the same as the ability to learn how to do tasks of a given complexity."

*Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) *citing Yurt v. Colvin*, 758 F.3d 850, 857 (7th

Cir. 2014). In *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), as amended on reh'g (Apr. 13,

2018), the Seventh Circuit remanded where the ALJ limited the claimant to "understanding,

remembering, and carrying out simple work instructions," "exercising simple work place

judgments," "routine work," and "no more than occasional changes in the work setting" as those

accommodations did not account for the claimant's moderate difficulties in concentration,

persistence or pace. The ALJ limited the types of tasks Plaintiff could perform, but did not

explain how that limitation addressed Plaintiff's problems with concentrating and persisting at

any kind of task throughout the workday.

Further, the ALJ independently concluded that Plaintiff could sustain employment so long

as he was limited to no production rate pace work with occasional changes in the job setting. (AR

20); *See Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No physician testified—no medical records [re]vealed—that Garcia has the residual functional capacity ascribed to him by the administrative law judge"). In *Novak v. Berryhill*, 2017 WL 1163733 *7 (N.D. Ill. Mar. 29, 2017), the court remanded where the ALJ determined that the claimant with moderate concentration, persistence, or pace limitations could not meet fast-paced quotas but could meet end-of-day requirements, noting that the ALJ improperly envisioned a "tortoise-and-the-hare scenario in which plaintiff would be able to keep pace consistently throughout the day but could somehow catch up later in the day" where no evidence supported that inference. The *Novak* court held that "there is nothing in the record to suggest that plaintiff, despite his slow processing speed, had unusual bursts of productive energy akin to a college student who pulls an all-nighter to finish a paper." *See also Spears v. Colvin*, 2016 WL 5851592 *4 (S.D. Ind. Oct. 5, 2016) (remanding where "the ALJ's limitation of Ms. Spears to 'routine, uninvolved tasks not requiring a fast assembly quota pace,' was insufficient to account for the moderate limitations in concentration, persistence, or pace that the ALJ found").

Plaintiff argues that no evidence in this case suggests that Plaintiff was capable of working at a steady pace so long as he was limited to no assembly line work. (AR 20.) By contrast, the record reflects that Plaintiff was diagnosed with generalized anxiety disorder, bipolar disorder I, major depressive disorder, and chronic psychosis by Dr. Robbins. (AR 328-30, 399, 403.) Plaintiff complained of difficulty concentrating, trouble sleeping, fatigue, insomnia, moodiness, anxiety, and hallucinations. (AR 329, 346.) In October 2015 Plaintiff complained of crying spells to Dr. Robbins. (AR 417.) Plaintiff told Dr. Robbins in January 2016 that he felt manic swings and very low depressive periods. (AR 438-41.) In May 2016 Plaintiff complained

of morning anxiety attacks. (AR 461.) Consultative examining psychologist Dr. Durak observed that Plaintiff's concentration was somewhat inattentive and distractible. (AR 323.) His memory was sometimes inconsistent and his mood and affect were anxious and depressed. (AR 323.) He could only recall three of six items after ten minutes elapsed time. (AR 324.) Dr. Durak diagnosed attention deficit hyperactivity disorder. (AR 325.) Plaintiff also stated that he could not focus and had problems following directions. (AR 212.) His wife similarly testified that Plaintiff would start tasks but not finish them and that he had problems dealing with new situations or changes in routine. (AR 57, 60.) Plaintiff argues that this evidence suggests that Plaintiff was unable to sustain the performance of even an "average" pace throughout the workday. Plaintiff contends that this error was not harmless as the ALJ failed to discuss Plaintiff's potential to be off-task for a work-preclusive amount of time despite evidence suggestive of significant problems sustaining pace. *See Kukec*, 2017 WL 5191872 *3-4.

Plaintiff further argues that, the ALJ failed to explain how Plaintiff was accommodated by a limitation to interacting with supervisors frequently and with co-workers and the public occasionally. (AR 20.) While the State agency psychologists opined that Plaintiff could work with "limited social interaction," they did not arrive at the conclusions contained in the ALJ's RFC assessment. (AR 82, 92-97); *Garcia*, 741 F.3d at 762. Those doctors also found that Plaintiff had moderate limitations in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (AR 81-82.) The ALJ did not explain how these limitations were translated into the RFC assessment despite giving great weight to the State agency doctors' opinions, and did not explain how the presence of "moderate" limitations in both categories led to the conclusion that Plaintiff could only occasionally interact

with the general public but could frequently interact with supervisors. *See Briscoe ex rel. Taylor*, 425 F.3d at 352; *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (holding that an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws). Plaintiff testified to hallucinations. (AR 45.) His wife also testified that Plaintiff experienced auditory and visual hallucinations during manic phases. (AR 58-59.) Dr. Robbins diagnosed chronic psychosis in September 2015 and opined to work-preclusive limitations in Plaintiff's ability to interact with others. (AR 399, 403, 658-59.) Plaintiff's wife stated that he went through periods of extreme irritability and anger. (AR 55.) He frequently "spaced out" and was unable to participate in conversation. (AR 61.)

In *Spiva v. Astrue*, 628 F.3d 346, 350 (7th Cir. 2010), the Seventh Circuit remanded where the ALJ did not properly assess how the claimant's hallucinations impacted his ability to interact with others: "A psychotic person busy trying to cope with evil spirits and evil thoughts is not likely to be employable as a shelf stocker in such a store [as Walmart]." Plaintiff points out that the ALJ in this case did not explain why evidence of psychosis, hallucinations, and anger issues led to the conclusion that Plaintiff could frequently interact with supervisors and occasionally interact with the public and co-workers. *See* SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions"). Plaintiff argues that this error was not harmless as the vocational expert testified that if an individual of Plaintiff's age, education, and work experience got into arguments with or threatened a supervisor or co-worker they would be unable to sustain employment. (AR 69-70); *see also* SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a

sustained basis) to respond appropriately to supervision, coworkers, and usual work situations…A substantial loss of ability to meet any of these basic work-related activities…would justify a finding of disability").

In response, the Defendant asserts that the ALJ accommodated Plaintiff's moderate concentration, persistence, or pace restrictions by limiting Plaintiff to "understanding, remembering, and carrying out simple, routine, and repetitive tasks but not at a production rate pace" with only occasional changes in the job setting. (AR 19-20.) Defendant argues that Plaintiff's reliance on numerous Seventh Circuit cases holding that an accommodation to simple, routine work is insufficient to address moderate concentration, persistence, or pace limitations is misplaced.

The Seventh Circuit has, in fact, repeatedly remanded where an ALJ has improperly captured a claimant's moderate concentration difficulties with a limitation to simple, routine work. In a recent decision, *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019), the Seventh Circuit held that "again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations…We have also made clear that in most cases 'employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace," and thus, alone, are insufficient to present the claimant's limitations in this area." *See also Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Additionally, while the Defendant argues that unlike the ALJ in *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014, the ALJ here did not merely limit the claimant to unskilled tasks but 'otherwise captured' Plaintiff's moderate difficulties by expressly limiting him to no work at a production rate pace (e.g. assembly line work), no more than occasional interaction with coworkers and the public, no more than occasional decision making, and no more than occasional changes in the job setting, nearly all of these limitations have been held to be insufficient by the Seventh Circuit. In *Moreno*, 882 F.3d at 730, the Seventh Circuit held that a hypothetical limiting the claimant to "exercising simple work place judgments" and "no more than occasional changes in the work setting" did not account explicitly for the claimant's moderate concentration limitations. In *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019), the Seventh Circuit remanded where the ALJ limited the claimant "to 'unskilled work' with no 'fast-paced production line or tandem tasks.'" Also, in the present case, the ALJ's limitation to occasional interactions with co-workers and the public spoke to Plaintiff's interpersonal difficulties and did not accommodate his problems with concentration.

The Defendant argues that the ALJ afforded greater pace limitations in the RFC than the State agency psychologists opined, and there was no reversible error. However, the record shows significant evidence of Plaintiff's problems maintaining pace: Plaintiff was diagnosed with generalized anxiety disorder, bipolar disorder I, major depressive disorder, and chronic psychosis by Dr. Robbins. (AR 328-30, 399, 403.) Plaintiff complained of difficulty concentrating, trouble sleeping, fatigue, insomnia, moodiness, anxiety, and hallucinations. (AR 329, 346.) In October 2015 Plaintiff complained of crying spells to Dr. Robbins. (AR 417.) Plaintiff told Dr. Robbins in January 2016 that he felt manic swings and very low depressive periods. (AR 438-41.) In May

2016 Plaintiff complained of morning anxiety attacks. (AR 461.) Consultative examining psychologist Dr. Durak observed that Plaintiff's concentration was somewhat inattentive and distractible. (AR 323.) His memory was sometimes inconsistent and his mood and affect were anxious and depressed. (AR 323.) He could only recall three of six items after ten minutes elapsed time. (AR 324.) Dr. Durak diagnosed attention deficit hyperactivity disorder. (AR 325.) Plaintiff also stated that he could not focus and had problems following directions. (AR 212.) His wife similarly testified that Plaintiff would start tasks but not finish them and that he had problems dealing with new situations or changes in routine. (AR 57, 60.) Plaintiff argues that this evidence suggests that Plaintiff was unable to sustain the performance of even an "average" pace throughout the workday. *See DeCamp*, 916 F.3d at 675-76; *Novak v. Berryhill*, 2017 WL 1163733 *7 (N.D. Ill. Mar. 29, 2017); *Spears v. Colvin*, 2016 WL 5851592 *4 (S.D. Ind. Oct. 5, 2016). Clearly, contrary to the Defendant's arguments, the ALJ herein erred in failing to logically bridge this evidence of Plaintiff's difficulties maintaining pace with the conclusion that Plaintiff was accommodated by a restriction to no production rate pace work. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

Moreover, the ALJ did not explain why Plaintiff's moderate concentration difficulties and moderate limitations in interacting with others was accommodated by a limitation to occasional interactions with co-workers and the public and frequent interactions with supervisors. (AR 20.) The Defendant argues that the ALJ considered the entire record, as he was required to do, and expressly discussed evidence indicating that Plaintiff could interact frequently with supervisors and occasionally with coworkers and the public. However, the ALJ did not explain how the presence of moderate limitations in multiple mental functioning domains led to the conclusion

22

that Plaintiff could only occasionally interact with the general public but could frequently interact with supervisors. *See Briscoe ex rel. Taylor*, 425 F.3d at 352; *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (holding that an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws). While the State agency doctors found that Plaintiff had moderate limitations in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors (AR 81-82), the ALJ did not explain how those specific limitations were translated into Plaintiff's RFC assessment despite giving those doctors' opinions great weight. (AR 24); *See DeCamp*, 916 F.3d at 675-76 (remanding where the ALJ gave great weight to a State agency psychologist's opinions yet did not include all the limitations that doctor opined to in posing hypothetical questions to the vocational expert).

In the present case, the evidence shows that Plaintiff's impairments impacted his ability to interact with others: Plaintiff testified to hallucinations. (AR 45.) His wife also testified that Plaintiff experienced auditory and visual hallucinations during manic phases. (AR 58-59.) Dr. Robbins diagnosed chronic psychosis in September 2015 and opined to work-preclusive limitations in Plaintiff's ability to interact with others.(AR 399, 403, 658-59.) Plaintiff's wife stated that he went through periods of extreme irritability and anger. (AR 55.) He frequently "spaced out" and was unable to participate in conversation. (AR 61.) This evidence aligns with the State agency doctors' opinions that Plaintiff had moderate limitations in interacting appropriately with the general public and in accepting instructions and responding appropriately to criticism from supervisors, and the ALJ did not adequately support his conclusions that Plaintiff could frequently interact with supervisors yet occasionally interact with co-workers and

the public. This error was not harmless as the vocational expert testified that if an individual of Plaintiff's age, education, and work experience got into arguments with or threatened a supervisor or co-worker they would be unable to sustain employment. (AR 69-70); *see also* SSR 85-15.

The Defendant argues that the ALJ cited Plaintiff's adult function report, where he stated that his interactions with authority figures were "good, so long as it's for a limited time." (Tr. 19, 211). He also reported no problems getting along with family, friends, and neighbors (Tr. 19, 212). However, he told Dr. Durak that he preferred to associate with his immediate family (Tr. 19, 212, 325). Thus, the Defendant argues that Plaintiff's own statements provided support for the ALJ's RFC finding, where he indicated good interactions with authority figures, and a preference for minimal interactions with strangers. Clearly though, this is post-facto justification which relies on logic not specifically advanced by the ALJ in evaluating Plaintiff's RFC. *See Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (collecting cases concerning *Chenery* violations); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("But regardless of whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and [we] confine our review to the reasons supplied by the ALJ").

Additionally, while the Defendant argues that the State agency psychologists assessed moderate limitations in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, but they also opined that Plaintiff had no significant limitations in asking simple questions or asking for assistance, or in maintaining socially appropriate behavior in the workplace, the ALJ did not explain why those limitations—which per *DeCamp* had to be presented to the vocational expert—were mitigated by the State agency psychologists' opinions

that Plaintiff did not have limitations in asking simple questions. *Steele*, 290 F.3d at 941.

Accordingly, for all the above reasons, remand is appropriate on these issues.

Next, Plaintiff argues that the ALJ did not appropriately evaluate opinion evidence. The ALJ afforded "some weight" to the opinions of treating psychiatrist Dr. Robbins. (AR 23.) The ALJ then gave "great weight" to the opinions of the non-examining State agency reviewing psychologists as they reviewed the medical evidence, had applicable specialties, and were familiar with the disability program. (AR 24.) The ALJ reasoned that Dr. Robbins' opinions were internally inconsistent and inconsistent with treatment notes. Plaintiff, however, argues that the ALJ did not provide good reasons for affording more weight to the opinions of non-examining doctors.

In weighing treating source opinions, ALJs must determine the weight to give the opinion by considering the length of the treatment relationship; the nature and extent of the relationship; how well the opinion is supported with evidence or explanation; consistency with the record as a whole; and the specialization of the doctor. 20 C.F.R. Sec. 404.1527(c)(2). The ALJ must give good reasons for declining to give controlling weight to a treating doctor's opinions. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Here, Dr. Robbins was a specialist who had treated Plaintiff for over two years prior to rendering his opinions in August 2017. (AR 328, 656); *see* 20 C.F.R. Sec. 404.1527(c)(2)(i) ("when the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source"). Dr. Robbins' opinions also post-date the last State agency opinion in this case by nearly two years. (AR 92-97.) Dr. Robbins thus had a wider picture of Plaintiff's condition and was able

to assess evidence which the State agency psychologists did not review, including Plaintiff's complaints of crying spells, manic swings, depressive periods, and morning anxiety attacks. (AR 417, 438-41, 461.) In *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), the Seventh Circuit stated that "severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it." *See also Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("evidence from non-treating physicians who have not had access to a claimant's full medical record is 'essentially worthless'"); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (reversing and awarding benefits where the ALJ substituted his opinion for that of a treating psychiatrist).

Plaintiff further argues that the ALJ did not explain why the State agency psychologists' specializations and ability to review to the medical evidence meant that their opinions were due greater weight than Dr. Robbins' opinions. (AR 24.) Dr. Robbins is an M.D., not a Ph.D., and was able to review more medical evidence than the State agency consultants by virtue of his long treatment relationship with Plaintiff. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding where the ALJ did not consider the claimant's treating relationship with her treating psychiatrist). The rationale the ALJ herein advanced for affording "great weight" to the non-examining State agency psychologists' opinions suggests that the ALJ should have given more weight to Dr. Robbins' opinions. *See Carradine*, 360 F.3d at 756; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (the contrary opinion of a non-examining physician, by itself, does not constitute substantial evidence to upset a treating physician's opinion). The ALJ did not give "good reasons" for adopting the opinions of the non-examining State agency psychologists rather than those of treating psychiatrist Dr. Robbins.

The Defendant argues that treating psychiatrist Dr. Robbins submitted an extreme opinion that did not correlate with his actual examination findings, which were mostly benign and that the ALJ accordingly properly declined to afford controlling weight to Dr. Robbins' opinion. However, as Plaintiff points out, the ALJ did not evaluate Dr. Robbins' opinion in line with the factors outlined in 20 C.F.R. Sec. 404.1527 and did not give "good reasons" for not giving controlling weight to that opinion. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Dr. Robbins was a specialist who had treated Plaintiff for over two years prior to rendering his opinion in August 2017; Dr. Robbins' opinion also post-dated the last State agency opinion by nearly two years. (AR 92-97, 328, 656).

The Defendant also argues that the ALJ reasonably found that unlike Dr. Robbins's assessment, the State agency psychologists' opinions were generally consistent with treatment records from Dr. Robbins and with the residual functional capacity. However, the ALJ actually stated that the State agency psychologists' specializations and ability to review medical evidence warranted giving their opinions more weight than Dr. Robbins' opinion. (AR 24.) As noted, the State agency psychologists reviewed significantly less of the record than Dr. Robbins did, suggesting that Dr. Robbins' opinion was based on a more complete assessment of the evidence as a whole. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("evidence from non-treating physicians who have not had access to a claimant's full medical record is 'essentially worthless'"). The ALJ also did not explain why his favorable view of the State agency psychologists' specializations did not lead to the conclusion that Dr. Robbins' opinion was due more weight as he was a treating psychiatrist, not a psychologist. The ALJ did not advance "good reasons" for adopting the opinions of the non-examining State agency psychologists rather than

those of treating psychiatrist Dr. Robbins. Accordingly, remand on this issue is warranted.

Lastly, Plaintiff argues that the ALJ did not properly assess Plaintiff's subjective allegations. Plaintiff claims that the ALJ inconsistently found that Plaintiff's statements concerning the intensity, persistence, and functionally-limiting effects of his symptoms were both "not entirely consistent" and "not consistent" with the record as a whole. (AR 21); *Carradine*, 360 F.3d at 756. In *Parker v. Astrue*, 597 F.3d 921-22 (7th Cir. 2010), the Seventh Circuit referred to similar language as "meaningless boilerplate" because it does not communicate what weight the ALJ afforded the claimant's statements. In *Minger v. Berryhill*, 307 F.Supp.3d 865, 872-73 (N.D. Ill. 2018), the court held that the "not entirely consistent" standard is not correct, and that even discussion of a claimant's allegations under the ambit of the "not entirely consistent" standard must result in remand. *See also Farley v. Berryhill*, 314 F.Supp.3d 941, 946 (N.D. Ill. 2018) (remanding where the ALJ's use of a "not entirely consistent" standard was too rigorous and did not align with the appropriate "reasonably accepted as consistent" standard"); *Bancolita v. Berryhill*, 2018 WL 2731227 *4 (N.D. Ill. Jun. 7, 2018).

In the present case, the ALJ did not evaluate Plaintiff's testimony in accord with the appropriate, "more likely than not," preponderance of the evidence standard outlined in Social Security Regulations and instead subjected those allegations to improper, stricter standards. *See* 20 C.F.R. Sec. 404.953(a). The ALJ further did not properly evaluate Plaintiff's allegations of significant psychiatric symptoms and did not explain why Plaintiff's highly limited daily activities were inconsistent with his allegations. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (an ALJ "explain the inconsistencies between [a claimant's] activities of daily living, his complaints of pain, and the medical evidence"). The record reflects that Plaintiff rarely cooked

because he would leave items on the stove and forget he started cooking. (AR 240.) His wife handled their finances because Plaintiff would get confused easily or forget to pay bills. (AR 240.) Plaintiff needed reminders to go places and his wife did the grocery shopping. (AR 240.) The ALJ did not explain why these numerous qualifications on Plaintiff's daily activities were not consistent with his allegations. In *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009), the Seventh Circuit held that "an ALJ cannot disregard a claimant's limitations in performing household activities." *See also Akin v. Berryhill*, 887 F.3d 314, 316 (7th Cir. 2018) ("The ALJ should have developed a more fulsome record about Akin's testimony of pain before discounting it"); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) ("The ALJ ignored Craft's qualifications as to he carried out those activities…Each activity left him exhausted.").

Moreover, Plaintiff was prescribed numerous medications by Dr. Robbins, including Adderall, Latuda, Risperdal, Elavil, Abilify, Zyprexa, Depakote, and Lexapro. (AR 327, 346, 390-90, 397, 405-06, 439, 526.) The ALJ did not explain why Plaintiff's willingness to take at least eight different antidepressant and antipsychotic medications did not support his serious and disabling allegations. The Seventh Circuit has held that taking "heavy doses of strong drugs" indicates that a claimant's complaints are likely valid. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014).

The Defendant contends that the ALJ reasonably considered Plaintiff's independent day-to-day functioning in evaluating his allegations of disabling seizures and mental health symptoms.  However, the record reflects that Plaintiff rarely cooked because he would leave items on the stove and forget he started cooking. (AR 240.) His wife handled their finances because Plaintiff would get confused easily or forget to pay bills. (AR 240.) Plaintiff needed

reminders to go places and his wife did the grocery shopping. (AR 240.) The ALJ did not explain why these numerous qualifications on Plaintiff's daily activities were not consistent with his allegations and thus did not reasonably consider Plaintiff's daily activities.

The Defendant also argues that the ALJ discussed the fact that Plaintiff's medications were effective in managing his symptoms, noting that "controllable conditions are not disabling." Yet the Seventh Circuit has held that "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 740; See also *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561 (7th Cir. 2008) ("Similarly, Dr. Center's general conclusion that medication has provided 'significant benefit' to Tate does not prove anything unless the improvement is shown to be connected in some rational way to her ability to work"). Plaintiff was prescribed Adderall, Latuda, Risperdal, Elavil, Abilify, Zyprexa, Depakote, and Lexapro. (AR 327, 346, 390-90, 397, 405-06, 439, 526.) Despite these prescriptions, he continued to display psychotic behavior and exhibit problems interacting with others and maintaining concentration. The ALJ did not explain why the multiple anti-depressant and anti-psychotic medications Plaintiff took did not suggest that his allegations of serious psychological symptoms were consistent with the record. Accordingly, remand is appropriate.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR

FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.


 Entered: June 7, 2019.


                                                 s/ William C.  Lee
                                                 William C. Lee, Judge
                                                 United States District Court